IN THE CIRCUIT COURT OF TIPPAH COUNTY, MISSISSIPPI

JULIA GREER, individually as next friend
and on behalf of all wrongful death
beneficiaries of ROSE CARR, deceased.

                      PLAINTIFF,

v.

CHARLES ELLIOTT, M.D, individually,
PRIMARY CARE CLINIC OF RIPLEY,
P.A., MARSHALL HOLLIS, individually,
HOLLIS DISCOUNT PHARMACY, INC.,
PURDUE PHARMA, L.P., PURDUE
PHARMA, INC., THE PURDUE
FREDERICK COMPANY, INC., PAR
PHARMACEUTICAL COMPANIES, INC.;
PAR PHARMACEUTICAL, INC.;ENDO
INTERNATIONAL, PLC; ENDO HEALTH
SOLUTIONS, INC.; ENDO
PHARMACEUTICALS, INC.; and JOHN
DOES 1-10

                DEFENDANTS.

CIVIL ACTION NO.: CV2019-106

## COMPLAINT

## JURY TRIAL DEMANDED

COMES NOW, JULIA GREER, individually as next friend and on behalf of all wrongful

death beneficiaries of ROSE CARR, deceased (hereinafter "Carr" or "'Plaintiff"), by and through

the undersigned counsel of record, and states unto this Honorable Court as a cause of action

against Defendants and alleges the following:

## INTRODUCTION

1.    Like thousands of other individuals, Rose Carr suffered from chronic pain for the

majority of her adult life. In her attempts to obtain pain control and promote her overall health

and enjoyment of life, Rose Carr sought and received medical care, was prescribed an excessive

and unreasonable amount of opioid medication, became addicted and ultimately died.

12th ___ DAY OF
August _____ 20 19 __
RANDY GRAVES, CIRCUIT CLERK
BY _____ DC

1

Exhibit 1

2.     Prescription opioids are powerful pain-reducing medications that include prescription oxycodone and hydrocodone, among others. Hydrocodone is a Schedule II and III narcotic, and a controlled substance. OxyContin is a Schedule II narcotic and a controlled substance. Oxycodone is a Schedule II narcotic and a controlled substance. A substance listed in the Schedule II has a high potential for abuse and has a currently accepted but severely restricted medical use in treatment in the United States and abuse or overuse of the substance may lead to severe psychological and physical dependence.

3.     Although these medications can help manage pain when prescribed properly and in a monitored and reasonable amount for the condition, over prescribing of opioids can cause serious harm including addiction, compromised cardiac function, compromised respiratory function, overdose and death.

## PARTIES

4.     Plaintiff Julia Greer is an adult resident citizen of Corinth, Mississippi. At all times relevant herein, she resided in Ripley, Mississippi. She is the surviving sister and next of kin of Rose Carr, deceased. She is suing as legal representative of all wrongful death beneficiaries of Rose Carr, deceased.

5.     At all times relevant herein, Defendant Primary Care Clinic of Ripley, Inc. was a for profit company, organized and existing under the laws of the State of Mississippi, with its principal place of business in Ripley, Mississippi. Defendant, at all times relevant herein, was conducting and doing business in Ripley, Mississippi, where patients were received and treated.

6.     The acts performed by Defendant, Primary Care Clinic of Ripley's physicians, nurses, and other agents and employees of Defendant were in connection with their duties at Primary Care Clinic of Ripley and they were acting within the scope of their employment and/or

2

agency. Accordingly, Defendant is responsible and vicariously liable for the negligent acts and omissions of its physicians, nurses, agents and/or employees, as hereinafter described, under the doctrines of *respondeat superior*, apparent agency, actual agency, and express agency.

7.      At all times relevant herein, Defendant Charles Elliott, M.D. was as resident of Mississippi and was duly licensed to practice medicine in the state of Mississippi.  Dr. Elliott practices medicine at Primary Care Clinic of Ripley in Ripley, Mississippi.  Dr. Elliott was, upon information and belief, at all relevant times an employee and/or agent of Primary Care Clinic of Ripley and did practice medicine.

8.      At all relevant times herein, Defendant Hollis Discount Pharmacy, Inc. was a for profit company, organized and existing under the laws of the State of Mississippi, with its principal place of business in Ripley, Mississippi. Defendant, at all times relevant herein, was conducting and doing business in Ripley, Mississippi, where as a pharmacy, it sold prescription medication to its customers. While selling prescription medication to Rose Carr, the acts performed by pharmacists, and other agents and employees of Defendant were in connection with their duties at Hollis Discount Pharmacy and they were acting within the scope of their employment and/or agency. Accordingly, Defendant is responsible and vicariously liable for the negligent acts and omissions of its physicians, nurses, agents and/or employees, as hereinafter described, under the doctrines of *respondeat superior*, apparent agency, actual agency, and express agency.

9.      At all relevant times herein, Defendant Marshall Hollis, was a resident of Mississippi and was duly licensed as a pharmacist in the State of Mississippi. Marshall Hollis currently resides in Ripley, Mississippi. Marshall Hollis was, upon information and belief, at all relevant times an employee and/or agent of Hollis Discount Pharmacy and rendered pharmacological services.

3

10.     At all relevant times herein, Defendant Purdue Pharma L.P. was a limited partnership organized under the laws of the state of Delaware with its principal place of business in Connecticut.  Defendant Purdue Pharma, Inc., is a New York corporation with its principal place of business in Connecticut.  Defendant The Purdue Frederick Company, Inc. is a New York corporation with its principal place of business in Connecticut.  Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company Inc., and their U.S. Drug Enforcement Administration ("DEA") registrant subsidiaries and affiliates are collectively referred to as "Purdue."  At all relevant times, Purdue is or was in the business of manufacturing the opioid OxyContin and promotes, markets, advertises and sells OxyContin in Ripley, Tippah County, Mississippi.

11.     At all relevant times herein, Defendant Endo Health Solutions Inc. was a Delaware corporation with its principal place of business in Malvern, Pennsylvania. Defendant Endo Pharmaceuticals Inc. is a wholly-owned subsidiary of Endo Health Solutions Inc. and is a Delaware corporation with its principal place of business in Malvern, Pennsylvania. Defendant Endo International, PLC has two principal places of business: one in Dublin, Ireland and the other in Malvern, Pennsylvania.

12.     Defendant Par Pharmaceutical, Inc. is a Delaware corporation with its principal place of business in Chestnut Ridge, New York and is a wholly owned subsidiary of Par Pharmaceutical Companies, Inc. f/k/a Par Pharmaceutical Holdings, Inc. Defendant Par Pharmaceutical Companies, Inc. is a Delaware corporate with its principal place of business in Chestnut Ridge, New York. Par Pharmaceutical, Inc. and Par Pharmaceutical Companies, Inc. were acquired by Endo International, PLC in September 2015 and serve as operating companies of Endo International, PLC. Endo International, PLC, Endo Health Solutions Inc., Endo

4

Pharmaceuticals Inc., Par Pharmaceutical Companies, Inc., Par Pharmaceutical, Inc., and their DEA registrant subsidiaries and affiliates are hereinafter collectively referred to as "Endo." At all relevant times, Endo is or was in the business of manufacturing and selling Endocet, an opioid medication which was taken by Rose Carr. Endo promotes, markets, advertises and sells Endocet in Ripley, Tippah County, Mississippi.

13.     Defendant Does 1 through 10 are individuals, corporations, limited liability companies, partnerships or other entities whose acts or omissions amounted to negligence, gross negligence, medical malpractice/medical negligence, pharmaceutical malpractice/pharmaceutical negligence, and/or products liability and consequently contributed to or directly resulted in the death of Rose Carr. The identities of these Defendants are unknown to the Plaintiff until adequate discovery is allowed.

## JURISDICTION AND VENUE

14.     The acts and omissions giving rise to this lawsuit all occurred in Ripley, Tippah County, Mississippi. This Court has proper jurisdiction and venue over this action and the parties hereto. This lawsuit is timely filed pursuant to applicable Mississippi law.

15.     Venue is proper in Tippah County, Mississippi because the causes of action arose in Tippah County, all relevant events occurred in Tippah County, Mississippi, and the Defendants conducted business in Tippah County, Mississippi.

## NATURE OF THE ACTION

16.     Plaintiff brings this action against the Defendants asserting claims for negligence and gross negligence against all parties, and medical malpractice/medical negligence against Defendants Charles Elliott, M.D., Primary Care Clinic of Ripley, Inc., Marshall Hollis and Hollis Discount Pharmacy, Inc. and product liability against all of the defendants that either

5

manufactured, designed and/or distributed the opioid and pain medication.

## FACTUAL ALLEGATIONS

17.     Rose Carr (hereinafter "Ms. Carr") first sought medical care from Charles Elliott, M.D. (hereinafter "Dr. Elliott") and Primary Care of Ripley, P.A. at least as early as February 17, 2006, as indicated in the initial pain management contract entered into between Ms. Carr and Primary Care Clinic of Ripley, P.A.

18.     On that earliest record of treatment produced thus far, dated October 2, 2009, Ms. Carr sought medical care for reports of fatigue, low back pain, shoulder pain, and neck pain. Dr. Elliott's notes indicate that Ms. Carr was suffering from chronic pain, as she had suffered from it for nine years at the time of the visit.

19.     At the time of the October 2, 2009 appointment, Dr. Elliott prescribed Ms. Carr OxyContin Oral Tablet Sustained Release 12hr 80mg twice a day and Percocet Oral Tablet 10/650mg every 4 hours as needed.  At this appointment, Dr. Elliott refilled these prescriptions for Ms. Carr due to Ms. Carr's reported continued chronic pain.

20.     Dr. Elliott continued to prescribe and order Ms. Carr 80mg of OxyContin twice daily and Percocet 10/650mg every 4 hours as needed until December 29, 2009. From January 2010 onward through June 2016, Dr. Elliott prescribed varying dosages of opioids to Ms. Carr despite having knowledge of their potency, and their correlation with addiction and substance abuse.

21.     From January 2010 through June 2016, Dr. Elliott prescribed approximately 4,200 OxyContin pills to Ms. Carr which included 2,100 pills for 80mg, 1,320 pills for 60mg, 660 pills for 40mg, and 120 pills for 30mg. During this same timeframe, Dr. Elliott prescribed Ms. Carr approximately 9,600 Percocet/Endocet pills, with each pill containing a dosage of oxycodone

6

varying from 7.5mg to 10mg. The actual figures prescribed are likely much greater as Ms. Carr entered into her initial pain contract in 2006, but no pharmacy or medical records produced thus far document treatment prior to 2009.

22.     OxyContin is a powerful narcotic manufactured and distributed by Purdue.

23.     Endocet (oxycodone with acetaminophen) is a powerful narcotic manufactured and distributed by Endo.

24.     The pharmaceutical defendants misrepresented to Rose Carr's medical providers that these medications were appropriate for chronic pain and long-term use.  These statements were false, and the pharmaceutical defendants intentionally hid the risks of prescribing these medications for long term use.  The pharmaceutical defendants also minimized the significant symptoms of opioid withdrawal—which include drug cravings, anxiety, insomnia, abdominal pain, vomiting, diarrhea, sweating, tremor, tachycardia (rapid heartbeat), and the unmasking of anxiety, depression, and addiction—and grossly understated the difficulty of tapering, particularly after long-term opioid use.

25.     Furthermore, Dr. Elliott prescribed approximately 6,300 benzodiazepines, including, but not limited to Ativan 1mg, concurrently with the opioids, which are both central nervous system depressants, in spite of the significantly increased risk of depressed respiration, increased sedation, impaired cognitive function, coma, and death.

26.     Dr. Elliott had Ms. Carr enter into a second "pain agreement" on March 9, 2012 whereby she was required to obtain her prescriptions from Hollis Discount Pharmacy, Inc. in Ripley, Mississippi.  A third agreement was subsequently entered into on July 7, 2014 that also required Ms. Carr to fill her prescriptions at Hollis Discount Pharmacy.

27.     During the entire time while Ms. Carr was under the care of Dr. Elliott and being

prescribed the opioid medications and benzodiazepines, she obtained her prescriptions from Hollis Discount Pharmacy, Inc.

28. During all relevant times, Marshall Hollis was a licensed pharmacist and the owner of Hollis Discount Pharmacy, Inc. Based upon information and belief, Marshall Hollis was the pharmacist that filled all of Ms. Carr's prescriptions while she was receiving prescriptions from Dr. Elliott.

29. From January 2010 through June 2016, Hollis Discount Pharmacy and Marshall Hollis filled Ms. Carr's prescriptions and dispensed the approximately 4,200 OxyContin pills and approximately 9,600 other opioid-based pills. Hollis Pharmacy and Marshall Hollis did not question the amount or duration of these prescriptions and did not warn Ms. Carr of the potential ramifications of taking this number of opioids long term.

30. Based upon information and belief, all of Dr. Elliott's patients to whom an opioid pain medication was prescribed were required to fill their prescriptions at Hollis Pharmacy. This is due to the fact that on March 9, 2012, Ms. Carr entered into a pain management agreement with Primary Care Clinic of Ripley P.A. which required her to fill her prescriptions at Hollis Discount Pharmacy. A third agreement was subsequently entered into on July 7, 2014 that also required Ms. Carr to fill her prescriptions at Hollis Discount Pharmacy. Therefore, Hollis Discount Pharmacy and Marshall Hollis had actual knowledge of the pattern of over-prescribing opioids to patients of Primary Care Clinic of Ripley, P.A.

31. Ms. Carr continued under the care of Charles Elliott, M.D. and Primary Care Clinic of Ripley, P.A. for at least six (6) years, even after she moved to West Virginia briefly in 2013 and again in 2016. Charles Elliott, M.D. and Primary Care of Ripley, Inc. were responsible for monitoring the adverse effects on Ms. Carr as a resulting from the opioid medications.

8

32.     Ms. Carr sought treatment pain treatment when living in West Virginia, and during the course of said treatment she was weaned down to 20mg of OxyContin twice a day in January 2014.  As a result of Ms. Carr's uncontrollable addiction OxyContin and sever withdrawals when her dosage was decreased, Ms. Carr returned to Dr. Elliott and Primary Care Clinic of Ripley, P.A.

33.     Despite having knowledge that Ms. Carr had made significant, albeit painful progress in recovering from her addiction to the pills, Dr. Elliott and Primary Care Clinic of Ripley, P.A. chose to reverse course and began ramping up the prescribed dosage despite being on actual notice of the addictive properties of OxyContin and its likelihood of abuse.

34.     In August 2014, Troy R. Cappleman, M.D. (hereinafter "Dr. Cappleman") prescribed Ms. Carr 30mg of OxyContin twice a day. In October 2014, Dr. Elliott prescribed Ms. Carr 40mg of OxyContin twice a day. In July 2015, Dr. Elliott prescribed Ms. Carr 60mg of OxyContin twice a day. These dosages were being gradually increased while Dr. Elliott and Primary Care Clinic of Ripley, P.A. were concurrently prescribing Ms. Carr another opioid, Percocet/Endocet (oxycodone with acetaminophen) and benzodiazepines.

35.     After writing excessive prescriptions for a plethora of opioid medications over a period of at least eight (8) years and after solidifying Ms. Carr's addiction following her 2014 attempts to recover from her addiction, in July 2016, Dr. Elliott and Ripley Primary Care suddenly and without any attempt to taper Ms. Carr, withdrew all care from Ms. Carr and refused to refill any prescription for her.   The last prescription filled by Ms. Carr that was written by Dr. Elliott and Ripley Primary Care was on June 23, 2016.

36.     Dr. Elliot and Ripley Primary Care's decision to abandon Rose Carr while knowing that she had a serious addiction to the opioid based drugs which had been systematically prescribed to her was unexplained and undocumented by Dr. Elliott and Ripley Primary Care.   Furthermore,

Dr. Elliott and Ripley Primary Care knew of the serious adverse psychological and physical ramifications of their conduct in abandoning Rose Carr and refusing to continue to treat her while having knowledge of her serious opioid addiction.

37.     Charles Elliott, M.D. and Ripley Primary Care were aware that the sudden withdrawal of all of Ms. Carr's opioid based medications and refusal to medically taper her off these medications would have serious health consequences. However, instead of referring Ms. Carr to a medical provider to assist her with withdrawing from the opioids prescribed by Dr. Elliott and Ripley Primary Care, these Defendants decided to cease care, refuse to see Ms. Car for any reason and left Ms. Carr without any medical support during this critical time.

38.     Over the next twelve (12) months, Rose Carr suffered with withdrawals and attempted to obtain medical assistance and relief from her withdrawal symptoms while her psychological and physical health rapidly deteriorated.

39.     In mid-2017, she was admitted to Hubbard Hospice House in Charleston, West Virginia on or about June 9, 2017. Ms. Carr was determined to be terminally ill, be extremely anxious, depressed, have unresolved opioid dependency. and COPD.

40.     Ms. Carr passed away on June 13, 2017 at the age of 58. Her cause of death was designated as chronic obstructive pulmonary disease, a condition which was exacerbated by her long-term use of opioids.

41.     The Defendants actions in prescribing, marketing, and dispensing unconscionable amounts of opioids to Rose Carr to treat her chronic pain resulted in her becoming an addict with long-term dependence on opioids. Rose Carr's dependence on opioids caused physical suffering, caused her chronic conditions to worsen, resulted in psychological stress and anxiety as a result of her inability to cease taking these opioids and, ultimately, caused her death.

## CAUSES OF ACTION

### MEDICAL MALPRACTICE – CHARLES ELLIOTT, M.D. AND RIPLEY PRIMARY CARE CLINIC, INC.

42.     The Plaintiff hereby repeats and realleges each and every allegation set forth above.

43.     Plaintiff has complied with the provisions of Miss. Code Ann. § 15-1-36 by mailing written notice of claim to Charles Elliott, M.D. and Primary Care Clinic of Ripley, Inc. giving notice of Plaintiff's intention to file this lawsuit for medical negligence. The notice requirements of Miss. Code Ann. § 15-1-36 have been satisfied.

44.     Plaintiff has complied with the provisions of Miss. Code Ann. § 11-1-58 by consulting with an expert prior to filing the instant complaint. The consultation requirements of Miss. Code Ann. § 11-1-58 have been satisfied, and a certificate of compliance is attached hereto.

45.     Defendants Charles Elliott, M.D. and Ripley Primary Care Clinic, Inc. knew or should have known that the amount and combination of drugs that were prescribed and administered to Ms. Carr, including OxyContin, Percocet, Endocet, and other opioid-based medications for an extended and excessive period of time would likely result in serious adverse events, including addiction, physical dependency, deteriorated quality of life, and depressed cardiac function. Further, they knew or should have known prescribing these medications concurrently with benzodiazepines for an extended period of time significantly increased the risk of depressed respiration, increased sedation, impaired cognitive function, coma, and death.

46.     As a direct and proximate result of the extended length of time that the opioid medications were prescribed, the excessive amount of the opioid medications that were prescribed, and the combination of opioid medications that were prescribed, Ms. Carr suffered injuries and death.

47.     The evaluation and treatment of Ms. Carr by Defendants was below the acceptable

11

standards of care, skill, and diligence. Accordingly, the treatment, evaluation, and prescribing of excessive opioid medications amounted to medical negligence. The medical negligence of Defendants included, but was not limited to:

    a) Failing to exercise reasonable care and diligence in the application of knowledge, skill, care and ability in the treatment and evaluation of Rose Carr;

    b) Failing to exercise their best judgment in their care and treatment of Rose Carr;

    c) Failing to comply with the applicable standard of care;

    d) Ordering an amount and combination of drugs, including OxyContin, Lortab, and other opioid-based medications that was likely to result in serious adverse events; and

    e) Other negligent acts which may come to light in the course of discovery.

    48. As a direct and proximate result of the negligence of Defendants, Rose Carr suffered injuries and death. The injuries and damages sustained by Ms. Carr include, but are not limited to:

    a) Physical pain and suffering;

    b) Mental and emotional pain and suffering;

    c) Permanent injury;

    d) Medical expenses;

    e) Loss of enjoyment of life;

    f) Death;

    g) Funeral and burial expenses; and

    h) All damages available to her under the law.

## PHARMACEUTICAL MALPRACTICE - HOLLIS PHARMACY AND MARSHALL HOLLIS, INDIVIDUALLY

49.     The Plaintiff hereby repeats and realleges each and every allegation set forth above.

50.     Plaintiff has complied with the provisions of Miss. Code Ann. § 15-1-36 by mailing written notice of claim to Hollis Discount Pharmacy and Marshall Hollis giving notice of Plaintiff's intention to file this lawsuit for medical/pharmaceutical negligence. The notice requirements of Miss. Code Ann. § 15-1-36 have been satisfied.

51.     Plaintiff has complied with the provisions of Miss. Code Ann. § 11-1-58 by consulting with an expert prior to filing the instant complaint. The consultation requirements of Miss. Code Ann. § 11-1-58 have been satisfied, and a certificate of compliance is attached hereto.

52.     Defendant, Hollis Discount Pharmacy, dispensed unreasonable quantities of opioids from its pharmacy in Ripley, Mississippi despite being on notice of the prescribing physician's pattern of over-prescribing opioids.

53.     Defendants Hollis Discount Pharmacy and Marshall Hollis owed the decedent, Rose Carr, a duty to exercise reasonable care in filling prescriptions and to not repeatedly refill prescriptions of dangerous and highly addicting opioids and filling those concurrently with benzodiazepines.

54.     The prescriptions filled by the Defendants for Rose Carr at the direction of Charles Elliott, M.D. are unreasonable on their face because they were written in a quantity, frequency, dosage or combination that a reasonable pharmacist would either have checked with the prescribing doctor, warned the patient, or refused to fill the prescriptions.

55.     Defendants Hollis Discount Pharmacy and Marshall Hollis had actual knowledge of the dangers of over prescribing opioid pain medications and the risks to Rose Carr of her taking these dangerous and addictive opioid medications in an excessive amount and for an unreasonable

13

amount of time.

56. Further, Defendants Hollis Discount Pharmacy and Marshall Hollis dispensed approximately 6,300 benzodiazepines, including but not limited to Ativan 1mg, concurrently with the opioids. Defendants Hollis Discount Pharmacy and Marshall Hollis knew or should have known the opioids being prescribed concurrently with the benzodiazepines for an extended period of time significantly increased the risk of depressed respiration, increased sedation, impaired cognitive function, coma, and death.

57. Hollis Pharmacy was aware of the excessive number of prescriptions being written by Elliott and his practice as Elliott required his patients to execute a pain management agreement whereby they could only get their opioid pain medications filled at Hollis Pharmacy.

58. The Defendants breached their duty of care to Rose Carr by failing to warn her of the inherent risks in filling repeated and unreasonable prescriptions of opioids and failed to warn of the potentially fatal consequences of same.

59. The pharmaceutical negligence of Defendants included, but was not limited to:

   a) Failing to use due and proper care in filling and dispensing prescriptions;

   b) Failing to exercise the level of skill and care recognized by reasonably prudent and similar pharmacy professionals;

   c) Dispensing or filling prescriptions that were unreasonable on their face or in light of the circumstances;

   d) Failing to warn under the circumstances;

   e) Failing to comply with their own relevant policies and procedures;

   f) Failing to comply with relevant statutory and regulatory provisions;

   g) Subjecting Rose Carr to an unreasonable risk of harm for their foreseeable conduct

in filling and dispensing dangerous and excessive amounts of opioids; and

h) Other negligent acts which may come to light in the course of discovery.

## NEGLIGENCE – ALL DEFENDANTS

60.     The Plaintiff hereby repeats and realleges each and every allegation set forth above.

61.     At all relevant times, the Defendants had a duty to exercise reasonable care in prescribing, distributing and marketing opioid medications in Ripley, Tippah County, Mississippi.

62.     The pharmaceutical Defendants misrepresented, understated or hid the highly addictive propensities of opioid medications generally and used unsafe marketing practices. Further, the pharmaceutical defendants failed to warn or advise the prescribing physicians of the addictive qualities of these medications.

63.     By engaging in negligent conduct that created an unreasonable risk of harm to Rose Carr, the Defendants failed to exercise reasonable care to prevent known and potential harms that were actually inflicted upon Rose Carr.

64.     The Defendants' actions in prescribing and dispensing unconscionable amounts of opioids to Rose Carr to treat her chronic pain resulted in her becoming an addict with long-term dependence on opioids. Rose Carr's dependence on opioids caused physical suffering, caused her chronic conditions to worsen, and resulted in psychological stress and anxiety as a result of her inability to cease taking these opioids without serious health consequences.

65.     Reasonably prudent manufacturers of opioids, prescribing physicians, and dispensing pharmacies and pharmacists would anticipate the damages that would befall Rose Carr as a direct result of the opioid medications obtained by her, and would have taken action to prevent such harm and damages.

66.     The Defendants, individually and jointly, failed to exercise reasonable care by

providing Rose Carr with opioid medications in an excessive quantity for an excessive period of time and failing to disclose the true nature and significant risks associated with the opioid medications that he was taking.

67.     The Defendants' breach of duty, individually and jointly, caused the injury and death of Rose Carr and each Defendant is jointly and severally liable for the damages to Ms. Carr as a result of the negligence of the Defendants.

## PRODUCTS LIABILITY

68.     Plaintiff reasserts the allegations in the foregoing paragraphs as if fully set out herein.

69.     At all times material to this action, Defendants, except individual defendants, who were engaged in the business of the design, development, manufacture, testing, packaging, promotion, marketing, distribution, labeling, and/or sale of opioid products.

70.     At all times material to this action, Defendants' opioid products were expected to reach, and did reach, consumers in Ripley, Mississippi, including Plaintiffs herein, without substantial change in the condition in which they were sold.

71.     Defendants knew that the damage causing characteristics of Defendants' product include its addictive properties on patients and the associated health risks with over utilizing these drugs.

72.     Defendants knew that prolonged use of opioids leads to decreased effectiveness, requiring increases in doses to achieve the same level of pain relief, markedly increasing the risk of significant side effects and addiction. Defendants conducted studies documenting these risks yet failed to publish the results or warn of the documented risks.

16

73. The risks of opioid addiction are grave, and Defendants had a duty to warn about these risks.

74. Providing such warnings would have been easily feasible but would have interfered with Defendants' marketing efforts. Instead, Defendants promoted falsehoods and minimized the risk of addiction and withdrawal from long term opioid use. The failure to warn or adequately warn of known risks, dangers, and side effects were not only negligent but also were a violation of the product/strict liability laws of the state of Mississippi.

75. Defendant, PURDUE PHARMA, L.P., PURDUE PHARMA, INC., THE PURDUE FREDERICK COMPANY, INC., PAR PHARMACEUTICAL COMPANIES, INC.; PAR PHARMACEUTICAL, INC.;ENDO INTERNATIONAL, PLC; ENDOHEALTH SOLUTIONS, INC.; ENDO PHARMACEUTICALS, INC., hereinafter "Pharmaceutical Defendants" knew that opioids are too addictive and too debilitating for long-term use for chronic pain such as in the case of Rose Carr. Defendants failed to warn Rose Carr of these limitations on the use of these drugs.

76. Pharmaceutical Defendants' products were unreasonably dangerous at the time they left the control of Pharmaceutical Defendants because of inadequate warning.

77. The opioid product manufactured and/or supplied by Pharmaceutical Defendants were defective in design in that an alternative design exists that would have prevented addiction

78. A reasonably prudent manufacturer or seller would not have put Pharmaceutical Defendants' products on the market had it known of the products' dangerous condition and/or defective design.

79.     Therefore, Pharmaceutical Defendants are liable for the damages caused to Rose Carr by their opioid products' unreasonably dangerous and defective design and inadequate warnings of their opioids' addictive properties.

## DAMAGES

80.     Plaintiff reasserts the allegations in the foregoing paragraphs as if fully set out herein.

81.     As a direct and proximate result of the actions and omissions of Defendants, Decedent Ms. Carr suffered damages including, but not limited to, medical and funeral expenses, physical injuries, pain and suffering, mental anguish, loss of enjoyment of life, future lost wages and loss of life.

82.     Plaintiff, as a wrongful death beneficiary of Decedent Ms. Carr, is legally entitled under the Mississippi Wrongful Death Statute, Miss. Code Ann. § 11-7-13, to recover in this action all damages for all wrongful death beneficiaries of Decedent Ms. Carr whose death was legally and proximately caused by the acts and omissions of Defendants.

83.     As a result of the aforementioned acts and/or omissions, Defendants are liable for all elements of damages arising from the violation of Decedent Ms. Carr's rights and her wrongful death, including but not limited to the following:

a.     Damages for the physical pain and suffering of Rose Carr prior to her death;

b.     Damages for the mental anguish and horror suffered by Rose Carr prior to her death;

c.     Damages for the losses of financial support and maintenance which Rose Carr would have provided to Plaintiff;

    d. Damages for the loss of love, companionship, society, advice and care of Rose Carr, the Plaintiff suffered and will suffer in the future;

    e. Damages for the funeral expenses resulting from the death of Rose Carr;

    f. Damages for the value of the life of Rose Carr;

    g. Damages for the severe psychological, physical and emotional distress suffered by Plaintiff arising from the death of Rose Carr;

    h. Damages for all other losses, both economic and intrinsic, and tangible and intangible arising from the death of Rose Carr;

    i. Past pain and suffering;

    j. Past medical expenses;

    k. Extreme mental anguish and emotional distress;

    l. Punitive damages; and

    m. Other damages to be shown during discovery and at trial.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests the following relief: That process is issued in accordance with law to the Defendants and that Plaintiff be granted a jury trial and judgment from and against the Defendants as follows:

    a) Reasonable compensatory damages from and against each Defendant, in their individual or official capacities, individually, jointly, severally and vicariously, as appropriate;

    b) Punitive damages from and against each Defendant in their individual capacities in an amount reasonably calculated to punish each Defendant and to deter similar conduct by other healthcare providers, pharmacists, pharmacies and others similarly situated;

    c) Pre-judgment interest on liquidated damages;

    d) Post-judgment interest;

e) All costs associated with bringing this action and prosecution, including all costs of court, reasonable attorney fees and expenses; and

f) General Relief, to which Plaintiff may be entitled which has been specifically pled.

Respectfully submitted, this the 12th day of August, 2019.

JEFFERSON V. HESTER, MSB# 104904
KIMBERLY P. SIMOES, MSB# 10251
MICHAEL D. GREER, MSB# 5002
*Counsel for Plaintiff*

Greer, Russell & Dent, PLLC
117 N. Broadway
Tupelo, Mississippi 38802
(662) 842-5345 / Phone
(662) 842-6870 / Facsimile
jhester@greerlawfirm.com
mgreer@greerlawfirm.com

Simoes Law Group
117 N. Broadway
Tupelo, Mississippi 38802
(662) 842-5345
kimberly@simoeslaw.com

## CERTIFICATE OF COMPLIANCE WITH MISS. CODE ANN. § 11-1-58

I, Jefferson V. Hester, do hereby certify that I have reviewed the facts of this case and have consulted with at least one (1) expert qualified pursuant to the Mississippi Rules of Civil Procedure and the Mississippi Rules of Evidence who is qualified to give expert testimony as to standard of care or negligence and who I reasonably believe is knowledgeable in the relevant

issues involved in this particular action, and that I have concluded on the basis of such review and consultation that there is a reasonable basis for the commencement of this action.

This, the 12th day of August, 2019.

JEFFERSON V. HESTER